1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Diane Sanchez,                              No. CV-21-01709-PHX-DLR

10                    Plaintiff,                  **ORDER**

11   v.

12   Commissioner of Social Security
     Administration,
13
                     Defendant.
14

15

16         On May 9, 2015, Claimant Diane Sanchez filed an application for Social Security

17   Disability Insurance benefits alleging disability beginning April 15, 2012. (AR. 96.) The

18   state agency denied her claim initially and again on reconsideration. (AR. 75–83, 85–92.)

19   After an administrative hearing, an Administrative Law Judge ("ALJ") issued an

20   unfavorable decision on May 2, 2018, finding that Sanchez is not disabled within the

21   meaning of the Social Security Act ("SSA"). (AR. 96–104.) The Appeals Council granted

22   review and remanded for a new hearing. (AR. 110–13.) Following a second hearing, a

23   different ALJ issued an unfavorable decision on January 14, 2021, finding Sanchez not

24   disabled. (AR. 13–24.) The Appeals Council denied review of that decision, making the

25   ALJ's decision the final decision of the Commissioner of the Social Security

26   Administration. (AR. 1–4.) Sanchez seeks judicial review of the Commissioner's decision

27   under 42 U.S.C. § 405(g).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.       Standard

A district court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court will uphold an ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Burnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). As a general rule, a court will uphold an ALJ's decision if the "evidence is susceptible to more than one rational interpretation." *Id.* That said, the court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

To determine whether a claimant is disabled for the purposes of the SSA, the ALJ must follow a five-step sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to demonstrate a severe impairment and an inability to perform past work. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). In step five, the burden shifts to the Commissioner to demonstrate the claimant is not disabled. *Id.*

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, then the claimant is not disabled within the meaning of the SSA and the inquiry ends. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment—or combination of impairments—that meets the duration requirement. *Id*. § 404.1520(a)(4)(ii). If the claimant does not have such an impairment, she is not disabled and the inquiry ends. *Id.* If, however, the claimant has such an impairment, the ALJ proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets, or is medically equal to, an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.  Part 404. *Id*. § 404.1520(a)(4)(ii). If so, the claimant

1    is disabled and entitled to benefits under the SSA. *Id.* If not, then the ALJ moves to the

2    fourth step, at which the ALJ assesses the claimant's residual functional capacity ("RFC")

3    and determines whether the claimant is still capable of performing past relevant work.

4    *Id.* § 404.1520(a)(4)(iv). If the claimant is capable of such work, the claimant is not

5    disabled and inquiry ends. If not, the ALJ proceeds to fifth and final step, where the ALJ

6    determines whether the claimant can perform any other work in the national economy

7    based on the claimant's RFC, age, education, and work experience. *Id.* §

8    404.1520(a)(4)(iv). If claimant is not capable of such work, the claimant is disabled and is

9    entitled to benefits. *Id.*

10           **II.    Analysis**

11           Sanchez raises two issues for the Court's consideration: whether the ALJ erred in

12   failing to (1) reconcile his step two findings of non-severe mental limitations with his RFC

13   determination and (2) give more weight to the opinion of Sanchez's treating physician.

14   (Doc. 15.)

15                  **A. Sanchez's Mild Mental Limitations**

16           In assessing a claimant's RFC, an ALJ is required to "consider all of [a claimant's]

17   medically determinable impairments …, including [those] that are not 'severe.'" 20 C.F.R.

18   § 404.1545(a)(2). Furthermore, the ALJ must "include a narrative discussion describing

19   how the evidence supports each conclusion, citing specific medical facts . . . and

20   nonmedical evidence." SSR 96-8p. Sanchez argues that the ALJ failed to comply with these

21   requirements by not including non-severe mental limitations assessed in step two in his

22   step four RFC determination. Sanchez contends the ALJ "offered no explanation for why

23   he did not incorporate his own findings of mental limitation, albeit mild, into the RFC."

24   That is not so.

25           First, the ALJ considered Sanchez's medically determinable impairments of

26   depression, anxiety, and alcohol abuse within the four broad areas of mental functioning,

27   known as the "paragraph B" criteria. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00.A.2.b. The

28   ALJ found that Sanchez had "mild limitations" in two of the criteria: "understanding,

1   remembering, or applying information," and "concentrating, persisting, or maintaining
2   pace." The ALJ found no limitations in the remaining two criteria: "interacting with others"
3   and "adapting or managing oneself." Then, in making his step four RFC determination, the
4   ALJ expressly considered these mild mental limitations, stating "the following residual
5   functional capacity assessment reflects the degree of limitation the undersigned has found
6   in the "paragraph B" mental function analysis." (AR. 18.) The ALJ went on to provide a
7   narrative discussion describing the evidence supporting his conclusion that Sanchez has
8   the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a). (AR. 19–23.)

9       The ALJ complied with the SSA regulations: he considered Sanchez's mild mental
10  limitations and adequately explained his RFC determination. Importantly, there is no
11  requirement that every non-severe mental limitation be translated into a functional
12  limitation in the RFC. *See Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (rejecting
13  plaintiff's argument that the ALJ was required to include mild mental limitations in the
14  RFC determination); *Rania v. Kijakazi*, No. 2:20-cv-01541, 2022 WL 5771663, at *3 (E.D.
15  Cal. Dec. 6. 2021) ("While [SSA] regulations require the ALJ to consider the effect of all
16  plaintiff's impairments in formulating the RFC, they do not require him to translate every
17  non-severe impairment into a functional limitation in the RFC"); *Pugh v. Kijakazi*, No.
18  2:20-cv-02255, 2022 WL 1782517, at *5 (E.D. Cal. June 1, 2022) (holding that there is
19  "scant legal support" for the position that "the [ALJ is] required to account for plaintiff's
20  acknowledged mild mental limitations in the RFC"). Here, the ALJ considered and
21  reasonably rejected the more severe mental impairments prescribed by the state
22  psychologist consultants' opinions. (AR. 18.) Substantial evidence supports the ALJ's
23  finding that the opinions were internally inconsistent, as well as inconsistent with other
24  available evidence. Considering the whole record, it was rational to conclude that Sanchez,
25  in light of her mild mental limitations, had the RFC to perform light work.

26      Sanchez does not challenge the ALJ's mental limitations finding, nor does she
27  identify any particular evidence the ALJ failed to consider in assessing her mental
28  limitations. This Court finds that in formulating the RFC, the ALJ considered the record as

1    a whole and Sanchez's ability to meet the mental requirements of work. Further, the ALJ

2    adequately explained and grounded his RFC determination in substantial evidence.

3                    **B. Dr. Buyama's Medical Opinion**

4            For disability benefits claims filed prior to March 27, 2017, the SSA regulations

5    under 20 C.F.R. Part 404.1527 apply. Under these regulations, a treating physician's

6    opinion is generally entitled to deference. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

7    1995). More weight is given to the treating physician's opinion than to the opinions of non-

8    treating physicians because the treating physician is "employed to cure and has a greater

9    opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d

10   1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2). An ALJ must give a

11   treating source's medical opinion controlling weight if the opinion is "well-supported by

12   medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

13   with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If a

14   treating physician's opinion is not contradicted by another physician, the treating

15   physician's opinion may only be rejected for "clear and convincing reasons." *Lester*, 81

16   F.3d at 830. If, however, a treating physician's opinion is contradicted, it may only be

17   rejected for "specific and legitimate reasons" supported by substantial evidence in the

18   record. *Id.*; *see also Orn*, 495 F.3d at 632.

19           Here, Dr. Buyama, who began treating Sanchez in 2013, assessed Sanchez's work

20   capabilities in August 2020. Dr. Buyama opined that Sanchez would be off tasks more than

21   25% of the time, could only lift and/or carry up to 10 pounds occasionally, could not sit for

22   more than a total of four hours, and could only stand and/or walk for less than one hour in

23   an eight-hour workday. (AR. 1065–71.) At least two other medical opinions contradicted

24   this. (AR. 1013–24.) The parties do not dispute that the ALJ could reject Dr. Buyama's

25   opinion for specific and legitimate reasons supported by substantial evidence in the record.

26   (Doc. 15, 17.) The ALJ complied with these standards.

27           The ALJ afforded Dr. Buyama's opinion little weight for two primary reasons. First,

28   none of Dr. Buyama's examinations of Sanchez prior to the date last insured supported the

1      extreme limitations in the opinion. (AR. 22.) And second, objective medical evidence in

2      the record did not support Dr. Buyama's opinion. (AR. 23.)

3             Inconsistency between a treating physician's prior examinations and the physician's

4      opinion regarding a claimant's limitations is a specific and legitimate reason for affording

5      little weight to the opinion. *See Dennin v. Berryhill*, 706 Fed. App'x. 371, 372 (9th Cir.

6      2017) (holding that treating physician's "opinion's inconsistency with the record and her

7      treatment notes" is a specific and legitimate reason for rejecting the opinion); *Ghanim v.*

8      *Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a

9      treating provider's opinions may constitute an adequate reason to discredit the opinions of

10     a treating physician or another treating provider."). Here, substantial evidence supports the

11     ALJ's finding that Dr. Buyama's prior examinations are inconsistent with her medical

12     opinion regarding Sanchez's work limitations. Although Dr. Buyama's prior examinations

13     of Sanchez note joint tenderness and intermittent pain, the examinations show full strength

14     of Sanchez's extremities, negative gait disturbances, no muscle weakness, and full range

15     of motion. (*See, e.g.*, AR. 475, 488, 491, 495, 498.) Dr. Buyama's treatments of Sanchez

16     reflect no extreme limitations in either Sanchez's mobility or, more generally, her arms,

17     legs, and back. (*See, e.g.*, AR. 499, 502, 727, 734, 779, 815, 821.)

18            Inconsistency between a treating physician's opinion and objective medical findings

19     is also a specific and legitimate reason for affording little weight to the opinion. *Tonapetyan*

20     *v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical

21     opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief

22     and unsupported by clinical findings."); *Matney v. Sullivan*, 981 F.2d 1016, 1019–1020

23     (9th Cir. 1992) (holding that inconsistency between clinical findings and doctor's opinion

24     regarding plaintiff's work limitations is a specific and legitimate reason for disregarding

25     physician's conclusions). Here, substantial evidence supports the ALJ's finding that

26     Sanchez's longitudinal record of objective medical evidence does not support Dr.

27     Buyama's opinion limiting Sanchez to reduced sedentary RFC. Although a magnetic

28     resonance imaging of Sanchez's spine in August 2013 confirmed degenerative disc disease

1    with degenerative changes (AR. 404), x-rays of Sanchez's hands, knees, and feet were

2    unremarkable (*see e.g.*, AR. 406–09, 802–03). An x-ray of Sanchez's left foot showed

3    Achilles enthosophyte but was otherwise unremarkable. (AR. at 409.) Musculoskeletal

4    examinations of Sanchez starting in 2013 also were unremarkable. (*See* AR. at 443–568).

5    While some examinations indicated Sanchez had tenderness in her feet, Sanchez also had

6    a full range of motion and no muscle weakness. (*See e.g.*, AR. at 423, 802–03).

7    Sanchez contends that the ALJ did not consider Sanchez's joint pain as the primary

8    reason for Dr. Buyama's opinion limiting Sanchez to a reduced sedentary RFC. Instead,

9    the ALJ, Sanchez argues, overly relied on objective evidence including the negative x-ray

10   results and "irrelevant" physical examinations finding normal gait, strength, and range of

11   motion. This Court finds, however, that not only did the ALJ consider Sanchez's joint pain

12   (AR. 20) but also correctly considered the supportability of Dr. Buyama's medical opinion

13   as was required by 20 C.F.R. Part 404.1527:

14
15   > The more a medical source presents relevant evidence to
     > support a medical opinion, particularly medical signs and
16   > laboratory findings, the more weight we will give to that
     > medical opinion. . . . We will evaluate the degree to which these
17   > medical opinions consider all of the pertinent evidence in your
     > claim.

18   Thus, SSA regulations required the ALJ to examine both the evidence Dr. Buyama relied

19   on as well as *all* of the evidence relevant to the claim. Here, objective medical evidence

20   concerning Sanchez's extremities and her mobility was evidence pertinent to her claim.

21   The ALJ correctly considered such evidence in determining the weight to afford Dr.

22   Buyama's opinion.

23   Though Sanchez advocates for a more favorable interpretation of the evidence, the

24   ALJ's finding is rational. There is substantial evidence that prior examinations of Sanchez

25   and objective medical evidence do not support the extreme limitations in Dr. Buyama's

26   medical opinion. It is rational to conclude that, based on the record as a whole, Dr.

27   Buyama's medical opinion lacks supportability and thus should be afforded little weight.

28

1  And where the evidence is susceptible to more than one rational interpretation, the Court

2  must uphold the ALJ's conclusion.

3       **IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to

4  enter judgment accordingly and terminate this case.

5       Dated this 19th day of September, 2023.

6

7

8

9                 Douglas L. Rayes

10                United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28